UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEHU RAMIREZ,

        Petitioner,

vs.                              Case No. 3:18-cv-952-J-39PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## **ORDER**

### I.   INTRODUCTION

Petitioner Jehu Ramirez, through a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1), challenges his state court (Duval County) conviction for sexual battery.[1] Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 12).[2] Petitioner filed a Reply to Respondents' Response (Doc. 15). See Order (Doc. 11).

---

[1] Although Petitioner states he is also challenging a conviction for lewd and lascivious molestation, that conviction was reversed by the First District Court of Appeal (1st DCA).

[2] Respondents provided an Index to Exhibits (Doc. 12 at 60-61) with exhibits. In this opinion, the Court references the document and page numbers assigned by the electronic filing system.

## II.   PETITION

Petitioner raises six grounds in the Petition:

GROUND ONE:  The trial court erred in denying Appellant's request that he be allowed to incur cost [sic] for purposes of hiring an expert to assist with the motion to suppress statements.

GROUND TWO:  The trial court err[ed] in allowing N.E.M. to testify as to the child hearsay statements and it erred when it did not permit him to show the bias the witness had because of her immigration status.

GROUND THREE:  The Defendant's conviction and sentences were obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution where the Petitioner's trial counsel rendered ineffective assistance in advising the defendant not to testify.

GROUND FOUR:  The Petitioner's convictions and sentences were obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution where the Defendant's counsel rendered ineffective assistance in failing to move to suppress incriminating statements made by the Petitioner based on his intoxication.

GROUND FIVE:  The Petitioner's conviction and sentences were obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution where the cumulative effect of trial counsel's error deprived the Petitioner of a fair trial.

GROUND SIX:  The Defendant's Sixth and Fourteenth Amendment Protections under the United States Constitution have been violated during plea proceedings by the ineffective assistance of counsel for failing to properly advise him of the consequences of rejecting the    government's    pre-trial    offer.

2

> Specifically counsel failed to inform him of the maximum penalty of mandatory life when advising him of a favorable pretrial plea offer extended and authorized by the state thereby rendering the rejection of his plea involuntary.

Petition at 3, 4, 6, 8, 10, 12.

### III.   HABEAS REVIEW

In his Petition, Petitioner claims he is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court recognizes its authority to award habeas corpus relief to state prisoners "is limited by both statute and Supreme Court precedent." Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1330 (11th Cir. 2019), petition for cert. filed, (U.S. Apr. 20, 2019) (No. 19-8341). The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "prescribes a deferential framework for evaluating issues previously decided in state court[,]" Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted), limiting a federal court's authority to award habeas relief. See 28 U.S.C. § 2254; Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases"). As such, federal courts may not grant habeas relief unless one of the claims:

3

"(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019), cert. denied, 140 S. Ct. 2520 (2020).

In Knight, the Eleventh Circuit explained:

> A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams [v. Taylor, 529 U.S. 362 (2000)] at 413, 120 S. Ct. 1495. A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" Virginia v. LeBlanc, --- U.S. ----, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017)(quoting Woods v. Donald, --- U.S. ---, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015)); see also Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002) (explaining that "an unreasonable application is different from an incorrect one.").

4

Knight, 936 F.3d at 1330-31.

To obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. Harrington v. Richter, 562 U.S. 86, 102 (2011).  If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied.  Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1351 (11th Cir.), cert. denied, 140 S. Ct. 394 (2019).  Therefore, unless the petitioner shows the state-court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief.  Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

This Court must accept that a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).  This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.  Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).

5

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

The reviewing federal court's habeas corpus consideration of a petition under AEDPA is a guard against extreme malfunctions in the state criminal justice systems, not a mechanism for ordinary error correction. Richter, 562 U.S. at 102-103 (citation and quotation marks omitted). As noted in Sealey, 954 F.3d at 1354 (citations omitted), when reviewing whether there has been an unreasonable application of federal law, "[t]he key word is 'unreasonable,' which is more than simply incorrect." Consequently, state-court judgments will not easily be set aside due to the applicability of the highly deferential AEDPA standard that is intentionally difficult to meet. See Richter, 562 U.S. at 102. Although a high hurdle, this high standard does not impose a complete bar to issuing a writ, but it severely limits those occasions to those "where there is no possibility fairminded

jurists could disagree that the state court's decision conflicts"
with Supreme Court precedent.  Id.

## IV.  EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the
petitioner to establish the need for an evidentiary hearing."
Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th
Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245
(2017).  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057,
1060 (11th Cir. 2011) (opining a petitioner bears the burden of
establishing the need for an evidentiary hearing with more than
speculative and inconcrete claims of need), cert. denied, 565 U.S.
1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir.
1982) (same).  A petitioner must make a specific factual proffer
or proffer evidence that, if true, would provide entitlement to
relief.  Jones, 834 F.3d at 1319 (citations omitted).  Conclusory
allegations will not suffice.  Id.

In this case, the pertinent facts are fully developed in this
record or the record otherwise precludes habeas relief; therefore,
the Court can "adequately assess [Petitioner's] claim[s] without
further factual development," Turner v. Crosby, 339 F.3d 1247,
1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).
Petitioner has not met his burden as the record refutes the
asserted factual allegations or otherwise precludes habeas relief.

Thus, the Court finds Petitioner is not entitled to an evidentiary hearing.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises several claims of ineffective assistance of trial counsel.   To prevail on a Sixth Amendment claim of ineffective assistance of trial counsel, a petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

## VI.   GROUND ONE

> GROUND ONE:  The trial court erred in denying Appellant's request that he be allowed to incur cost [sic] for purposes of hiring an expert to assist with the motion to suppress statements.

Petitioner desired to hire a psychiatrist, Dr. Stephen Bloomfield, at an hourly rate of $150, for a cost up to $2500, to evaluate the voluntariness of Petitioner's confession and to testify, if needed, at a motion to suppress the confession hearing. Petition at 3.  Petitioner contends he was prejudiced by the trial

court's decision denying his motion requesting the assistance of an expert because the confession was the key evidence against Petitioner.  Id. at 3-4.  Petitioner complains the trial court's decision violated his rights to due process of law and deprived him of a fair trial.  Id. at 4.

Respondents submit that Petitioner failed "to alert the state court to the constitutional dimensions of this claim in state court."  Response at 18-19.  Indeed, upon review of the Initial Brief of Appellant, Petitioner solely raised a claim of trial court error.  (Doc. 12-3 at 3, 29-30).  Thus, ground one is unexhausted and procedurally defaulted.

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747-748, 111 S. Ct. 2546; Sykes,[4] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims

---

3 Coleman v. Thompson, 501 U.S. 722 (1991).

4 Wainwright v. Sykes, 433 U.S. 72 (1977).

> precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert. denied</u>, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." <u>Martinez</u>, 566 U.S. at 10

10

(citing Coleman, 501 U.S. at 750).  To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).  If cause is established, a petitioner must demonstrate prejudice.  To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."  Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).  The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.  Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

Respondents assert the claim is procedurally barred. Response at 20.  They submit the construed claim of a deprivation of due process of law and a fair trial was not raised in the state court and Petitioner has not shown any "cause" or "prejudice" to excuse the procedural default.  Id.

11

In addressing the question of exhaustion, a district court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"-namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state law claim." Kelley,[5] 377 F.3d at 134-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

---

[5] Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317 (11th Cir. 2004), cert. denied, 545 U.S. 1149 (2005).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir.
2012), cert. denied, 568 U.S. 1104 (2013).

The record demonstrates Petitioner did not assert a claim of
due process deprivation in the trial court, nor did he raise the
claim on direct appeal.  Indeed, on direct appeal, the claim was
specifically one of trial court error.

After a thorough review of the record before the Court, the
Court concludes Petitioner failed to exhaust a Fourteenth
Amendment claim in the state courts.  It is clear from state law
that any future attempts at exhaustion of this ground would be
futile.  As such, Petitioner has procedurally defaulted this
ground for relief.  Petitioner has failed to show cause and
prejudice or that a fundamental miscarriage of justice will result
if the Court does not reach the merits of ground one.

The Court finds Petitioner's claim of a deprivation of due
process of law and an unfair trial is unexhausted and procedurally
defaulted.  Petitioner has neither shown cause and prejudice nor
that a fundamental miscarriage of justice will result if the claim
is not addressed on its merits.  Consequently, ground one is due
to be denied.

## VII.  GROUND TWO

> GROUND TWO:  The trial court err[ed] in
> allowing N.E.M. to testify as to the child
> hearsay statements and it erred when it did

13

> not permit him to show the bias the witness
> had because of her immigration status.

Upon review, in this ground, Petitioner raises two distinct claims:  (1) the trial court erred in allowing the victim's mother, N.E.M.,[6] to testify to the child hearsay statement, and (2) the trial court erred in disallowing Petitioner from cross-examining N.E.M.  The first part of the claim is unexhausted and procedurally defaulted as Petitioner failed to bring to the state court's attention the constitutional nature of the claim.  (Doc. 12-3 at 33-35).  The record shows Petitioner presented the claim solely as one of trial court error.  Id.  Petitioner has neither shown cause and prejudice nor that a fundamental miscarriage of justice will result if the claim is not addressed on its merits.  Consequently, part one of ground two is due to be denied.

Alternatively, the Court finds part one of ground two presents an issue purely of state law that is not cognizable on federal habeas review.  Petitioner claims § 90.803(23), Fla. Stat., allows the introduction of child hearsay statements only under certain circumstances, with sufficient safeguards of reliability, and the trial court erred in allowing N.E.M. to testify to the child hearsay statement as it did not have these sufficient safeguards

---

6 The Court will refer to the victim's mother by her initials, "N.E.M."

of reliability.   (Doc. 12-3 at 33-34).   Thus, Petitioner's claim involves a statutory interpretation of state law by state courts, not a claim of constitutional dimension that Petitioner is in custody in violation of the Constitution or law or treaties of the United States.   28 U.S.C. § 2254(a).   Of import, the writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights."   Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)), cert. denied, 531 U.S. 1170 (2001).

The law in the Eleventh Circuit allows that only in cases of federal constitutional error will a federal writ of habeas corpus be available.   See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990). Consequently, federal habeas relief does not lie for errors of state law.   Clearly, it is not the province of this Court to reexamine state-court determinations on issues of state law.   See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).   "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"   Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (per curiam) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992).   Since this claim presents an issue that is not cognizable in this habeas proceeding, it cannot provide a basis for federal habeas corpus relief.   Furthermore, there is no breach of a federal constitution mandate and Petitioner is not entitled to federal habeas relief on the first part of ground two.

Upon review, the second part of ground two, the claim that the trial court erred in disallowing Petitioner from cross-examining N.E.M. depriving Petitioner of his constitutional right to full and fair cross-examination of the state's witness, has properly been exhausted.   (Doc. 12-3 at 34-35).   This claim was presented as one of trial court error as well as one of constitutional dimension.   Id.   Of importance for this Court's review, Petitioner asserted, "[a] defendant has a constitutional right to a full and fair cross-examination of the prosecution's witnesses."   Id. at 34.   Thus, Petitioner apprised the 1st DCA of the federal nature of the claim.   Baldwin v. Reese, 541 U.S. at 32.   The 1st DCA affirmed without additional comment as to this ground.   (Doc. 12-5 at 2-3).

The state, in its response brief on direct appeal, asserted Petitioner was not prevented from questioning the victim's mother as to any bias in testifying.  (Doc. 12-4 at 46).  The state pointed out that although the trial court sustained the state's objection to the question of whether N.E.M. was in the country illegally (the defense was attempting to show motivation to testify alleging the victim's mother was hoping to get a visa based on her testimony), the court told defense counsel, if Petitioner's girlfriend, Ana Salinas, was called to testify as to her theory that the victim's mother was trying to get a visa through her testimony, the court would allow the victim's mother to be called in rebuttal.  Id. at 50. Alternatively, the state argued the victim's mother's testimony was cumulative to the testimony presented by the victim and the playing of the Child Protection Team (CPT) interview of the victim; therefore, any bias of the victim's mother would be outweighed by the fact that her testimony echoed other evidence.  Id. at 51.

The trial record demonstrates the following.  Defense counsel asked N.E.M. if she were in the country illegally. (Doc. 12-2 at 73).  The prosecutor objected based on relevance.  Id.  At sidebar, defense counsel said Ms. Salinas told defense counsel that N.E.M. was "doing this with hopes of getting a visa at the end of everything based on her testifying and her daughter [being]

a victim in this trial." Id. at 74. The state objected on the basis of relevancy, arguing it was irrelevant, but recognizing the defense could bring the matter up in its case in chief, and the victim's mother could be called in rebuttal. Id. Defense counsel argued the question "goes to bias[.]" Id. The court sustained the objection, but stated, "if your witness [Ms. Salinas] comes in here and testifies to that, then we will have her [N.E.M.] for rebuttal." Id. Defense counsel asked if she needed to proffer any further questioning, or save it for later, and the court responded there should not be any more questions about the victim's mother's status in this country. Id. Again, the court sustained the state's objection. Id. at 75.

Petitioner contends the trial court erred in disallowing Petitioner from cross-examining the victim's mother, depriving Petitioner of the right to a full and fair cross-examination of the prosecution's witness. Defense counsel's question to N.E.M. was based on Ms. Salinas' expressed belief that the victim's mother was making these allegations against Petitioner and testifying against him in hopes of obtaining a visa. The trial court sustained the prosecution's objection as to relevancy; however, the court left the door open for the defense to call Ms. Salinas in its case-in-chief in order to show relevancy. At that point, if Ms. Salinas testified as to her allegation/theory, the victim's

18

mother would be made available on rebuttal and defense counsel would be given the opportunity to cross-examine the victim's mother.

The court did not close the door on defense counsel exploring the victim's mother's immigration status, but the court did require some showing of relevancy first. Petitioner elected not to call Ms. Salinas to establish the issue and show relevancy. Indeed, the defense decided not to call any witnesses. (Doc. 12-2 at 370-74). Significantly for purposes of this claim, Petitioner chose not to take the stand, he told the court he did not wish to call any witnesses to testify in his case, and he said he did not have any additional evidence he wished to present to the jury. Id. at 372. Ultimately, the defense rested without calling any witnesses. Id. at 374.

Under these circumstances, there was no Confrontation Clause violation. If the defense had called Ms. Salinas to testify to establish the foundation of the issue, showing the victim's mother's immigration status was somehow relevant, the victim's mother would have been made available to cross-examine on rebuttal as to her immigration status and any bias or motivation for her testimony based on that status and her hopes, if any, to obtain a visa.

Upon review of the trial record, there was no prejudice to the defense in this regard. The victim's mother's testimony was merely cumulative to the testimony already presented by the child victim and through the victim's CPT interview introduced at trial. See Response at 31-32. The victim's mother merely repeated what her daughter told her. She did not offer testimony concerning any direct knowledge of the incident. Under these circumstances, the trial court's decision did not deprive petitioner of a fair and impartial criminal trial. Of note, the 1st DCA affirmed the decision of the trial court on this ground. (Doc. 12-5).

Petitioner is not entitled to habeas relief on this ground, the second part of ground two, because the 1st DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts based on the evidence presented in the state court proceedings. Therefore, the Court concludes AEDPA deference is due and Petitioner is not entitled to federal habeas relief.

## VIII.   GROUND THREE

> GROUND THREE:  The Defendant's convictions and sentences were obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution where the Petitioner's trial counsel rendered ineffective assistance in advising the defendant not to testify.

20

Of note, Petitioner exhausted this claim of ineffective assistance of counsel by raising it in a postconviction Rule 3.850 motion. (Doc. 12-6 at 16-18). Petitioner argued defense counsel performed deficiently when counsel advised Petitioner not to testify because Petitioner would have vehemently denied the allegations against him, would have attested that the sheriff's investigator advised Petitioner to admit guilt so the judge would be more lenient at trial, would have testified he was heavily intoxicated during the interrogation, would have told the jury the victim had a urinary infection explaining the blood in her panties, and would have testified and explained that the translator, Leticia Freeman, misinterpreted Petitioner's statements because Ms. Freeman was a Spanish-speaking Puerto Rican, not a Spanish-speaking Mexican, and there were differences in the dialects resulting in misinterpretation by Ms. Freeman. Id. at 16-17.

The trial court, applying the two-pronged Strickland standard, denied this ground. (Doc. 12-6 at 26). Initially, the court succinctly described Petitioner's claim: "Defendant argues counsel advised him to not testify at trial and that such advice was erroneous where only Defendant could have supplied the evidence necessary to argue the defense theory counsel put forth at trial."

Id.  The court noted it first had to determine whether Petitioner voluntarily agreed with counsel not to take the stand.  Id. at 27.

The record shows Petitioner voluntarily agreed not to take the stand.  The court conducted a colloquy to determine whether Petitioner wished to take the stand.  (Doc. 12-2 at 352-353).  The court gave Petitioner time to discuss the matter with counsel. Id. at 353.  The defense chose to sleep on its decision and advise the court the following day.  Id. at 358.  The next day, the court revisited the matter, again advising Petitioner of his rights. Id. at 370-71.  Thereafter, Petitioner told the court he was not going to testify, assuring the court it was his decision not to testify.  Id. at 371.

After taking the record into consideration, the circuit court on post-conviction review found Petitioner's decision not to take the stand was voluntary.  (Doc. 12-6 at 27).  Next, the court addressed whether Petitioner demonstrated prejudice.  Id.  The court noted that Petitioner stated in his confession he did not have or use any drugs and the last time he had drunk alcohol was a week before the interview.  Id. at 28.  It was noted the interview took place after Petitioner had been given his Miranda[7] warnings in Spanish and the interview was recorded in its entirety.

_____

7 Miranda v. Arizona, 384 U.S. 436 (1966).

Id.  Demonstrating there had been no offer of leniency which prompted Petitioner to suddenly confess, the court emphasized the fact that Petitioner did not immediately confess to the sexual battery, but instead, repeatedly denied the allegations.  Id. Eventually, after a very thorough interrogation, Petitioner admitted he rubbed the outside of the victim's vagina.  Id.  After more extensive interrogation, Petitioner finally admitted he penetrated the victim's vagina with his finger.  Id.  Towards the end of the interview, Petitioner responded yes to each poignant question.  As for any confusion between dialects, the court noted that defense counsel effectively cross-examined Detective Freeman on her ability to translate, her lack of certification, and the variations in ability to speak and translate a language, even if native born.  Id.

The court held, based on the evidence and cross-examination presented at trial, "the points Defendant claims he would have raised during his testimony are either refuted by his prior statements or by other evidence or would be cumulative in nature." Id. at 29.  Furthermore, the court found, based on the victim's testimony and Petitioner's confession, there was no reasonable probability the outcome of the trial would have been different had Petitioner testified at trial.  Id.

23

Notably, had Petitioner testified he was highly intoxicated at the time of the interview, his credibility would have been discredited on cross-examination based on his own statements during the interrogation.   Also, the jury had the ability to discern whether Petitioner was intoxicated during the interrogation.   As for the claim that the dialects were different, causing Officer Freeman to misunderstand Petitioner, Petitioner at first said he touched the victim's vagina only from the outside. (Doc. 12-2 at 315).   Later, Petitioner responded affirmatively to the question whether he put his finger in the victim's vagina. Id. at 319.   Petitioner went on to explain that he did not pull down the victim's underwear made of Lycra when he put his finger inside.   Id. at 320.

As far as any testimony Petitioner could offer on whether the victim had a urinary tract infection, it would be highly discounted because Dr. Rachel Thomas testified that the victim did not have any signs of a urinary tract infection.   In fact, Dr. Thomas testified she tested the victim for a urinary tract infection, and the results were normal.   (Doc. 12-2 at 188).   The doctor described the victim's urine as "completely sterile, clear and very normal."   Id.   When asked if the victim had been given medication for a urinary tract infection on April 9, would there have still been signs of the bacteria on April 13, the doctor

responded she would expect at least some trace bacteria.  _Id_. at 188-89.  She testified however, there was no sign of a recent urinary tract infection that had started to resolve.  _Id_. at 189. The doctor said that based on the child's history indicating sexual abuse, "there could have been some transient temporary, maybe even superficial trauma[.]"  _Id_.

On cross-examination, however, Dr. Thomas admitted that if the victim had a urinary tract infection, it is possible that blood could appear in the urine.  _Id_. at 197-98.  Certainly, this testimony was more beneficial to the defense than having Petitioner state he believed the victim had a urinary tract infection.  Also helpful to the defense, the doctor opined there were no diagnostic findings indicative of sexual abuse and she found no scabs or abrasions on the victim's genital area.  _Id_. at 198-99.

The trial court concluded Petitioner was not prejudiced by accepting the advice of counsel not to testify.  (Doc. 12-6 at 29).  The 1st DCA affirmed.  (Doc. 12-9).

Petitioner has not met the _Strickland_ standard of prejudice. Without satisfying the prejudice component, Petitioner cannot prevail on his claim of ineffective assistance of counsel.  _See Reaves v. Sec'y, Fla. Dep't of Corr._, 872 F.3d 1137, 1151 (11th Cir. 2017), _cert. denied_, 138 S. Ct. 2681 (2018).

As the state court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of counsel, Petitioner is not entitled to habeas relief. The 1st DCA affirmed. The state court's ruling denying relief is entitled to AEDPA deference as its decision is not inconsistent with United States Supreme Court precedent including Strickland and its progeny, and the adjudication of this claim is not contrary to or an unreasonable application of United States Supreme Court law or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel raised in ground three of the Petition.

## IX.   GROUND FOUR

> GROUND FOUR: The Petitioner's convictions and sentences were obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution where the Defendant's counsel rendered ineffective assistance in failing to move to suppress incriminating statements made by the Petitioner based on his intoxication.

Petitioner exhausted his claim of ineffective assistance of trial counsel in his postconviction motion. (Doc. 12-6 at 19-20). He asserted, had his counsel moved to suppress Petitioner's confession on the basis of Petitioner's intoxication, the motion would have been granted and Petitioner would have been acquitted

26

at trial.   Id. at 20.   He asserted he would have been acquitted without the inculpatory statements because the state's case was weak.   Id.

After recognizing the Strickland two-pronged standard of review, id. at 26, the trial court denied relief.   Id. at 29.   In fact, the court soundly rejected Petitioner's claim, concluding the record refuted his contention he was intoxicated for his interrogation.   Id. at 29.   The court said, "as Defendant's own statements refute his claim of intoxication, counsel cannot be found ineffective for failing to file a meritless motion."   Id. On appeal of the denial of the postconviction motion, the 1st DCA affirmed per curiam.   (Doc. 12-9).

The trial court properly utilized the Strickland two-pronged standard when addressing the claim of ineffective assistance of trial counsel.   The court, relying on the record, denied relief. The 1st DCA affirmed.   As the state court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of counsel, Petitioner is not entitled to habeas relief.   The state court's ruling is entitled to AEDPA deference.   The state court's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable

determination of the facts.   Thus, AEDPA deference is due, and Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

## X.  GROUND FIVE

> GROUND FIVE:  The Petitioner's conviction and sentences were obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution where the cumulative effect of trial counsel's error deprived the Petitioner of a fair trial.

Petitioner raised a comparable claim in ground three of his Rule 3.850 motion.  (Doc. 12-6 at 20-21).  The trial court denied post-conviction relief, finding the alleged errors are either procedurally barred or without merit, consequently, the claim of cumulative error necessarily fails.  Id. at 30.  The 1st DCA affirmed.  (Doc. 12-9).

In considering a claim of cumulative error when addressing an ineffective assistance of trial counsel contention, under the cumulative error doctrine, the district court considers whether:

> "an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). We address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether the

28

> appellant was afforded a fundamentally fair
> trial. See United States v. Calderon, 127 F.3d
> 1314, 1333 (11th Cir. 1997).

Morris v. Sec'y, Dept. of Corr., 677 F.3d 1117, 1132 (11th Cir.

2012).

To the extent Petitioner is claiming trial counsel's errors

deprived Petitioner of a fair trial in violation of the Fourteenth

Amendment's Due Process Clause, the Court concludes he is not

entitled to habeas relief.  Through his Petition, Petitioner has

not shown he was deprived of a fair trial:

> [he] has not demonstrated error by trial
> counsel; thus, by definition, [Petitioner] has
> not demonstrated that cumulative error of
> counsel deprived him of a fair trial. See
> Yohey v. Collins, 985 F.2d 222, 229 (5th Cir.
> 1993) (explaining that because certain errors
> were not of constitutional dimension and
> others were meritless, petitioner "has
> presented nothing to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied,

531 U.S. 849 (2000).

In Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 564 (11th

Cir. 2009) (per curiam) (citing United States v. Cronic, 466 U.S.

648, 659 n.26 (1984)), cert. denied, 562 U.S. 589 (2010), the

Eleventh Circuit explained, although the Supreme Court has not

specifically addressed the applicability of the cumulative error

doctrine when addressing an ineffective assistance of trial

counsel claim, it has held there is no basis for finding a

constitutional violation unless the petitioner can point to specific errors of counsel which undermined the reliability of the finding of guilt.  Thus, a cumulative errors of counsel claim lacks merit without a showing of specific errors of counsel which undermine the conviction in their cumulative effect, amounting to prejudice.  Moreover, unless it is shown that specific errors of counsel undermine the reliability of the finding of guilt, there is no basis for finding a Sixth Amendment violation.  See Austin v. Sec'y, Fla. Dep't of Corr., No. 3:19cv331-/LAC/EMT, 2020 WL 2106410, at * 21 (N.D. Fla. Apr. 2, 2020) (citation omitted), report and recommendation adopted by 2020 WL 2097747 (N.D. Fla. May 1, 2020).

In his Petition, Petitioner has not demonstrated any of his trial counsel's alleged errors, considered alone, rise to the level of ineffective assistance of counsel; therefore, there are no errors to accumulate, and Petitioner is not entitled to habeas relief.  See Spears v. Mullin, 343 F.3d 1215, 1251 (10th Cir. 2003) (when the sum of various zeroes remains zero, the claim of prejudicial effect of cumulative errors is nil and does not support habeas relief), cert. denied, 541 U.S. 909 (2004).  As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his trial was fundamentally unfair and his counsel ineffective.  In this regard, Petitioner has not shown

specific errors which undermine the conviction in their cumulative effect; therefore, he has failed to demonstrate prejudice.  Even considered cumulatively, his assertions do not render the claim of ineffective assistance of counsel sufficient.  Robertson v. Chase, No. 1:07-CV-0797 RWS, 2011 WL 7629549, at *23 (N.D. Ga. Aug. 12, 2011) (citations omitted), report and recommendation adopted by 2012 WL 1038568 (N.D. Ga. Mar. 26, 2012), aff'd by 506 F. App'x 951 (11th Cir. 2013), cert. denied, 571 U.S. 842 (2013).  As such, Petitioner is not entitled to habeas relief on his claim that cumulative errors of counsel deprived him of a fair trial.

The state court decision passes AEDPA muster as singularly or cumulatively, the proposed deficient conduct does not meet the Strickland standard and Petitioner was not deprived of a fair trial.  Deference to the state court decision is due.  As such, applying AEDPA deference, Petitioner is not entitled to habeas relief and ground five is denied.

## XI.  GROUND SIX

> GROUND SIX:  The Defendant's Sixth and Fourteenth Amendment Protections under the United States Constitution have been violated during plea proceedings by the ineffective assistance of counsel for failing to properly advise him of the consequences of rejecting the government's pre-trial offer. Specifically counsel failed to inform him of the maximum penalty of mandatory life when advising him of a favorable pretrial plea offer extended and authorized by the state

> thereby rendering the rejection of his plea
> involuntary.

Respondents assert this claim is unexhausted and procedurally defaulted and Petitioner has not shown cause or a substantial claim to avoid the procedural default bar.  Response at 53-54, 57. Petitioner concedes that the claim is procedurally defaulted. Petition at 12.  He acknowledges that he did not raise this claim in state court; however, he contends he can show cause for the default and actual prejudice or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  Id. at 13.  He relies on the fact that he was not appointed counsel in the initial-review collateral proceeding, depriving him of the ability to properly raise a claim of ineffective assistance of trial counsel.  Id.  Petitioner also submits that he was at a deficit due to the language barrier (he speaks Spanish), he is unlearned in the law, and he had to rely on jailhouse lawyers in his initial collateral review proceeding. Id.  He relies on the holding in Martinez, 566 U.S. at 8, asserting he can demonstrate the underlying ineffective-assistance-of-counsel claim is a substantial one, i.e., his claim has some merit. Petition at 13.

Respondents assert Petitioner cannot establish cause as the claim he now asserts could have easily and readily been presented

in the state court as Petitioner was well aware of the circumstances forming the basis of the claim prior to filing his Rule 3.850 motion in the trial court.   Response at 55. Respondents contend, Petitioner's failure to establish cause is "alone dispositive."  Id. at 56.

In the underlying supporting facts to this ground, Petitioner states that his attorney, Luis Tous, communicated a pretrial plea offer of ten years in prison followed by fifteen years of probation.   Petition at 12.   Petitioner alleges Mr. Tous never told Petitioner he was facing a mandatory life sentence if he were to be found guilty at trial.  Id.

The record shows Mr. Tous was Petitioner's counsel for a few months, from approximately June 1, 2010 to September 23, 2010. (Doc. 12-1 at 10-11).   On September 23, 2010, the court allowed Mr. Tous to withdraw as counsel and appointed the Public Defender. The Public Defender took over the representation of Petitioner, and over two years passed before Petitioner's criminal case went to trial on October 23, 2012.

Several Assistant Public Defenders were involved with Petitioner's case pretrial, but Senovia Portis and Belkis Plata

were counsel at trial and sentencing.[8]   At sentencing on January

31, 2013, Petitioner said on cross-examination:

> I am going to be very clear, and very
> respectful at the same time.  All I have to
> say is that the evidence that were presented,
> they were in Spanish and English, and I did
> not see any damage done.  The daughter even
> said.  They came.
>
> **And I would say, if I would have done
> something wrong, from the very beginning I
> would have accepted it.**  And I'm sorry to say
> this again, but **I had an offer from five to
> eight years,** and **I did not want to accept it,**
> but maybe I was afraid.  I had fear.

(Doc. 12-1 at 250) (emphasis added).

The prosecutor asked Petitioner whether he understood that

what he did to the child is punishable by life in prison.  <u>Id</u>. at

251.  The prosecutor re-stated it:  "[w]hat you confessed to doing

to that child, and what the evidence showed in your trial, is

punishable by life in prison."  <u>Id</u>.  When asked if he understood

that, Petitioner responded affirmatively.  <u>Id</u>. at 251-52.

Petitioner was facing a sentence of mandatory life on count

one, the sexual battery count.  <u>Id</u>. at 256.  He was facing a

sentence of no less than twenty-five years to life on count two,

the charge of lewd and lascivious molestation.  <u>Id</u>.  In closing,

Ms. Portis said she understood what they were there for, and Mr.

---

[8] Ms. Portis spoke to Petitioner in Spanish.  (Doc. 12-1 at 251).

Ramirez was aware of it too.  <u>Id</u>. at 253.  Ms. Portis asked for a sentence that would at some point allow Petitioner to return to society and his family.[9]  <u>Id</u>. at 254-55.  She also asked that the cases be run concurrently, not consecutively.  <u>Id</u>. at 261.

Ms. Portis argument for leniency on the sentence should be considered in context.  While noting different elements in the two counts, she expressed some concern about a potential double jeopardy issue.  <u>Id</u>. at 259.  Upon request of defense counsel, an off-the-record sidebar discussion was held between the court and counsel.  <u>Id</u>. at 260.  Ms. Portis asked for concurrent sentences, "just on the basis of the reasons raised during this trial, **and the discussions with the Court**."  <u>Id</u>. at 261 (emphasis added).

Thereafter, appellate counsel raised the claim that Petitioner's conviction for sexual battery and lewd and lascivious molestation predicated upon a single act violated the prohibition against double jeopardy.  (Doc. 12-3 at 3, 25-28).  "The issue then is whether Appellant can be convicted and sentenced of two offenses for the single act of touching A.Z.'s vagina while penetrating it."[10]  <u>Id</u>. at 26.  The record shows Petitioner was

---

9 Notably, this argument would only apply to the lewd and lascivious count.

10 The prosecutor described Count I as the digital penetration and Count II as the touching of the vagina.

found guilty as charged on both counts and sentenced to consecutive terms of life in prison.  The 1st DCA found the dual convictions resulted from the same act of touching/penetration of the vagina. (Doc. 12-5 at 11).  Finding the conviction for lewd or lascivious molestation barred by double jeopardy, the 1st DCA reversed the conviction for lewd or lascivious molestation and remanded the case to the trial court to vacate that conviction.  Id.  The 1st DCA affirmed Petitioner's conviction and sentence for sexual battery.  Id.

On the record at sentencing, Petitioner said he had a pretrial plea offer from the state for five to eight years, but he stated he chose not to accept it, asserting he had done nothing wrong.  He also admitted he understood that what he had been charged with was punishable by life in prison.  Defense counsel argued for a lesser sentence, apparently with regard to count two, as that count allowed for a sentence of at least 25 years up to life in prison.  She also asked that the two counts run concurrently.  The record shows Ms. Portis expressed her concern there may be a potential double jeopardy issue even though the elements of the crimes were different.  At side bar, she brought the subject to the attention of the court.  Ms. Portis was correct in her belief as a double jeopardy claim was raised on direct

appeal and Petitioner obtained a reversal on the lewd and lascivious molestation count from the 1st DCA.

Respondents submit Petitioner cannot establish cause as the factual basis for the claim was known to him. Petitioner alleged his attorney at the inception of the case, Mr. Tous, failed to properly advise him, not that Mr. Tous failed to tell him about a ten-year plea offer. Thereafter, Petitioner was represented by the Public Defender's Office and was apparently given a more beneficial offer of five to eight years, as he stated on the record at sentencing. Petitioner explained he decided to reject the offer of five to eight years because he believed he had done nothing wrong; therefore, he would not accept an offer to plead to the charges. He further stated, had he done something wrong, he would have accepted an offer at the very beginning. At sentencing, Petitioner stated he understood he was facing a life sentence if convicted.

Thus, even assuming Mr. Tous failed to explicitly explain that the crime of sexual battery was punishable by mandatory life imprisonment, Mr. Tous represented Petitioner for a very brief period of time, and then the court appointed the Public Defender, and the Public Defender represented Petitioner. Petitioner does not contend that all of the Assistant Public Defenders failed to properly advise him of the penalty he was facing for sexual

battery.   When the state apparently made an even better offer of five to eight years, Petitioner declined that offer.   Even assuming Petitioner does make some assertion that all of his counsel failed to properly advise him of the maximum sentence for sexual battery, the maximum sentence was certainly known to him, as reflected by his statements at sentencing.   Thus, the factual basis for the claim was well known to him prior to the filing of his Rule 3.850 motion.

With regard to Petitioner's contention that he is Spanish-speaking and not well versed in the law, the record shows he was provided with an interpreter at trial and sentencing,[11] and it was repeatedly stated at sentencing that the penalty for the sexual battery count was mandatory life in prison.   As such, Petitioner was well-aware of his claim upon his sentencing.   Moreover, Petitioner has not shown that there were impediments to his raising the claim or that he was obstructed from raising this claim of ineffective assistance of counsel on collateral review.

"In general, lack of an attorney . . . in state post-conviction proceedings [does] not establish cause to excuse a procedural default."   Lambrix v. Sec'y, Fla. Dep't of Corr., 756

---

[11] Someone translated the Rule 3.850 motion into Spanish for Petitioner, as certified in the motion, and Petitioner confirmed the facts stated therein were true and correct. (Doc. 12-6 at 22).

F.3d 1246, 1260 (11th Cir. 2014) (citing Coleman v. Thompson, 501 U.S. 7222, 757 (1991)), cert. denied, 574 U.S. 832 (2014), cert. denied, 575 U.S. 986 (2015). Martinez provides a narrow, equitable, non-constitutional exception to the holding in Coleman. Petitioner's purported claim, however, is not the type of claim which requires post-conviction counsel to conduct investigative work or relies on a lawyer's in-depth understanding of trial strategy, or even demonstrates a need for the search for evidence outside the trial record. Baker v. Crews, No. 13-14049-CIV-MARTINEZ, 2014 WL 11429283, at *6 (S.D. Fla. Jan. 28, 2014), report and recommendation adopted by 2014 WL 11430927 (S.D. Fla. Aug. 28, 2014). The information was within Petitioner's grasp by the time of sentencing and before he filed his Rule 3.850 motion.

To the extent Petitioner claims his procedural default should be excused based on the narrow exception under Martinez, Petitioner must demonstrate the underlying ineffectiveness claim is substantial.[12] Assuming arguendo Petitioner's pro se status establishes cause, Sneathen v. Sec'y, Dep't of Corr., 787 F. App'x 567, 572 (11th Cir. 2019) (per curiam) (finding the petitioner litigated his postconviction motion pro se, and this pro se status established cause to excuse procedural default pursuant to

---

[12] The record demonstrates Petitioner did not have counsel for the filing of his post-conviction Rule 3.850 motion. (Doc. 12-6).

<u>Martinez</u>), Petitioner has failed to establish his claim is "substantial." To meet this requirement, Petitioner must demonstrate the claim has some merit. <u>Martinez</u>, 566 U.S. at 14. In this instance, the underlying ineffectiveness claim raised in ground six lacks merit; therefore, Petitioner has not demonstrated he can satisfy an exception to the procedural bar. To explain, the Court provides a merits analysis.

Petitioner asserts Mr. Tous was ineffective for failure to properly advise him of the consequences of rejecting the government's pre-trial offer of ten years in prison followed by fifteen years of probation. Petition at 12. Petitioner's own statements at the sentencing proceeding directly contradict his current contention that he would have accepted a plea offer of ten years followed by fifteen years of probation and he would not have exercised his right to trial if he had been correctly advised by Mr. Tous that the only possible sentence was mandatory life. <u>Id</u>. Indeed, the sentencing transcript reveals the state apparently made an offer of five to eight years in prison, Petitioner refused to accept the offer, and he told the court he had rejected the offer. (Doc. 12-1 at 250). Notably, Petitioner told the court, if he had done something wrong, from the beginning, he would have accepted a plea offer. <u>Id</u>. Immediately after making this statement, on cross examination, Petitioner admitted he knew what

he did to the victim was "punishable by life in prison." Id. at 251-52. As such, Petitioner made it quite clear that he had refused to accept a plea offer because he did not believe he had done anything wrong, but he would have accepted a plea offer, from the beginning, if he had done something wrong.

Petitioner has failed to show cause, and he does not meet the prejudice or manifest injustice exceptions. Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence gateway, Petitioner has not done so. The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Ala., 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002). Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In conclusion, the Court finds the claim raised in ground six is unexhausted and procedurally defaulted. As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, the court deems the claim raised in ground six procedurally defaulted, and Petitioner is

41

procedurally barred from raising the unexhausted claim raised in ground six in this proceeding.

Based on the above, Petitioner has failed to show he falls within the narrow parameters of the ruling in Martinez, in which the Supreme Court recognized a narrow exception for ineffective assistance of counsel/absence of counsel at initial-review collateral proceedings.  As Petitioner failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground six.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

2.   This action is **DISMISSED WITH PREJUDICE.**

3.   The **Clerk** shall enter judgment accordingly and close this case.

4.   If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of**

**appealability.**[13]   Because  this  Court  has  determined  that  a certificate  of  appealability  is  not  warranted,  the  **Clerk**  shall terminate  from  the  pending  motions  report  any  motion  to  proceed  on appeal  as  a  pauper  that  may  be  filed  in  this  case.   Such termination  shall  serve  as  a  denial  of  the  motion.

   **DONE AND ORDERED** at  Jacksonville,  Florida,  this  11th  day  of August,  2020.

_____
                BRIAN J. DAVIS
         United States District Judge

sa 8/10
c:
Jehu Ramirez
Counsel of Record

---

[13] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

43